UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION


| | | |
|---|---|---|
| JOHN B. FOY, | ) | CASE NO. 1:14CV907 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER BOYKO |
| | ) | |
| v. | ) | Magistrate Judge George J. Limbert |
| | ) | |
| CAROLYN W. COLVIN[1], | ) | REPORT AND RECOMMENDATION |
| ACTING COMMISSIONER OF | ) | OF MAGISTRATE JUDGE |
| SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |


John B. Foy ("Plaintiff"), seeks judicial review of the final decision of Carolyn W. Colvin

("Defendant"), Acting Commissioner of the Social Security Administration ("SSA"), denying his

applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI")[2].

ECF Dkt. #1.  For the following reasons, the undersigned recommends that the Court REVERSE

the ALJ's decision and remand the instant case.

## I.    PROCEDURAL AND FACTUAL HISTORY

Plaintiff applied for DIB and SSI on July 9, 2008, alleging disability since February 19,

2003. ECF Dkt.#11, Transcript of proceedings ("Tr.") at 372-381.   The SSA denied Plaintiff's

applications initially and on reconsideration.  *Id.* at 127-130, 153-178.  Plaintiff requested an

administrative hearing, and on April 13, 2011, the ALJ conducted an administrative hearing and

accepted the testimony of Plaintiff, with counsel present, and a medical expert ("ME"). Tr. at 41-69,

---

[1]On February 14, 2013, Carolyn W. Colvin became the acting Commissioner of Social Security, replacing Michael J. Astrue.

[2]Plaintiff indicates that he filed prior applications for DIB and SSI in November 2004 and August 2006, respectively, alleging disability beginning February 18, 2003 and he did not appeal the denial of those applications.  ECF Dkt. #13 at 2, fn. 1.  He further notes that the ALJ in the instant case opened those applications de facto as his current application constituted an implied request to reopen the prior applications and the ALJ did so when he adjudicated the entire period from February 19, 2003 through the date of his decision.  *Id.*

178.  On June 20, 2011, the ALJ held another hearing where he accepted the testimony of Plaintiff, with counsel, and a vocational expert ("VE").  *Id*. at 70-98.

On July 26, 2011, the ALJ issued a decision finding that Plaintiff had degenerative disc disease ("DDD") of the back and affective disorder, which qualified as severe impairments pursuant to 20 C.F.R. §§ 404.1520(c) and 416.920(c).  Tr. at 136.  He found that those impairments, individually and in combination, did not meet or medically equal any of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1, 20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526 ("Listings").  *Id*.  He further found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the following limitations: he could never climb ladders, ropes or scaffolds; he is precluded from unprotected heights and industrial hazards; he is limited to low stress work meaning no high production quotas or piece work; he is precluded from arbitration, confrontation, or negotiation with others; he is precluded from supervising the work of others; and he is limited to only superficial interaction with the public, co-workers and supervisors.  *Id*. at 137.  The ALJ noted that Plaintiff was still using heroin, but this finding was not material to the determination of his disability.  *Id*. at 138.

The ALJ further found that Plaintiff was unable to perform his past relevant work with the RFC that he determined, but he was still able to perform jobs existing in significant numbers in the national economy with the RFC.  Tr. at 138.  Plaintiff filed a request for review of the ALJ's decision with the Appeals Council.  *Id*. at 149.

On April 5, 2012, the Appeals Council remanded Plaintiff's case back to the ALJ, noting that the ALJ indicated that he relied upon an opinion of state agency medical consultant Dr. Khan, Ed.D, but the ALJ failed to include the limitations that Dr. Khan opined without explaining why he did not adopt such limitations.  Tr. at 149.  The Appeals Council also indicated that the ALJ's decision failed to acknowledge or evaluate the opinion of Dr. Smith, Ph.D., an agency consultative examiner and he also failed to provide a rationale for not being persuaded by the opinions of Dr. Jayber, a treating physician, who found that Plaintiff had marked and moderate mental limitations and marked and extreme physical limitations.  *Id*.  The Appeals Council further found that the ALJ's decision did not acknowledge or evaluate the opinion of Dr. Saghafi, a consultative examiner and the weight

-2-

assigned to this opinion or an explanation of why his RFC did not include this doctor's limitations. *Id.* at 150. Finally, the Appeals Council found that the ALJ's decision failed to evaluate Plaintiff's subjective complaints and their impact on the RFC that the ALJ determined for Plaintiff. *Id.* Thus, upon remand, the Appeals Council ordered the ALJ to further consider Plaintiff's maximum RFC and explain his assessed limitations with specific references to the record, evaluate the opinions of the treating and nontreating sources, further evaluate Plaintiff's subjective complaints and evaluate his symptoms pursuant to the social security regulations and rulings, obtain supplemental evidence from a VE, and offer Plaintiff a hearing to address the evidence submitted in conjunction with his request for review. *Id.* at 150-151.

On October 15, 2012, the ALJ held another hearing as required by the remand, where he accepted the testimony of Plaintiff, with counsel present, and the ME and the VE. Tr. at 100-125.

On November 21, 2012, the ALJ issued a Decision denying benefits. Tr. at 16-31. Plaintiff requested review of the Decision, and on February 27, 2014, the Appeals Council denied review. *Id.* at 1-7. On April 28, 2014, Plaintiff filed the instant suit seeking review of the Decision. ECF Dkt. #1. On November 19, 2014, with leave of Court, Plaintiff filed a brief on the merits. ECF Dkt. #13. On February 10, 2015, also with leave of Court, Defendant filed a brief on the merits. ECF Dkt. #16. Plaintiff subsequently filed a reply brief on March 3, 2015. ECF Dkt. #18.

**II**.     **SUMMARY OF RELEVANT PORTIONS OF THE ALJ'S DECISION**

On November 21, 2012, the ALJ determined that since February 19, 2003, Plaintiff suffers from back disorders (discogenic and degenerative), major depressive disorder, anxiety disorder, anti-social personality disorder, and substance abuse. Tr. at 19. He found that if Plaintiff stopped the substance abuse, the remaining limitations would cause more than a minimal impact on his ability to perform basic work activities. *Id.* Accordingly, the ALJ concluded that Plaintiff would continue to have a severe impairment or combination of impairments. *Id.*

At Step Three of the sequential analysis for entitlement to disability benefits, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled one of the impairments in the Listings at any time prior to October 13, 2009. Tr.

at 19.  The ALJ found that Plaintiff's impairments, including his substance use disorders, met Listings 12.04, 12.06, 12.08 and 12.09 beginning October 13, 2009, but if he stopped his substance abuse, he would not have an impairment or combination of impairments that met or medically equaled any of the Listings absent the substance abuse.  *Id*. at 20, 25.

The ALJ further found that prior to October 13, 2009 and after October 13, 2009, Plaintiff had the RFC to perform light work, as defined by 20 C.F.R. §§ 404.1567(b) and 416.967(b), in that he could lift and carry up to twenty pounds occasionally and ten pounds frequently; sit, stand and/or walk for six hours; occasionally push and pull; frequently use a foot pedal; occasionally use a ramp or stairs; occasionally stoop, kneel, crouch and crawl; but he could not climb ladders, ropes or scaffolds or frequently balance; he had to avoid unprotected heights; and he was limited to low stress work, with no high production quotas, no piece rate work, no work involving arbitration, negotiation, confrontation, supervision, or responsibility for the health, safety, or welfare of another; and he was limited to superficial interpersonal interaction with the public, co-workers and supervisors.  Tr. at 21, 26, 28.

The ALJ ultimately concluded that prior to October 13, 2009, Plaintiff was not capable of performing his past relevant work even if he stopped using substances.  Tr. at 24.  However, the ALJ found that there were significant numbers of jobs existing in the national economy that Plaintiff could perform with Plaintiff's age, education, work experience, and the RFC that he determined for Plaintiff.  Tr. at 29.  The ALJ further found that if Plaintiff stopped substance use, significant numbers of jobs existed in the national economy for him to perform.  *Id*. at 30.

The ALJ further found that although Plaintiff met Listing level severity as of 2009 onward, Plaintiff's substance use disorder is a contributing factor material to the determination of Plaintiff's disability as Plaintiff would not be disabled if he stopped substance use.  Tr. at 30.  As a consequence, the ALJ found that Plaintiff had not been under a disability as defined in the SSA and was not entitled to benefits.

**III.**   **STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS**

    **A.**   **The Standard Five-Step Process**

An ALJ must proceed through the required sequential steps for evaluating entitlement to

DIB or SSI.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see 20 C.F.R. § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step.  *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

> **B.**  **Review of Cases Involving Substance Abuse**

Under the Contract with America Advancement Act of 1996, a person shall not be considered disabled for social security disability benefits purposes if drug addiction or alcoholism would be a contributing factor material to a disability finding.  *Bartley v. Barnhart*, 117 Fed.Appx. 993, 998 (6th Cir. Dec. 20, 2004), unreported, citing Pub.L. No. 104-121 § 105(a)(1); *see also* 42 U.S.C. §§ 423(d)(2)(C), 1382c(a)(3)(J); H.R. 104-379, 104th Cong., 1995 WL 717402 (Leg.Hist.) at *20 (Dec. 4, 1995).

The Regulations provide for the following procedure to determine if drug addiction or alcoholism is material to the determination of disability:

> How we will determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

a) General. If we find that you are disabled and have medical evidence of your drug addiction or alcoholism, we must determine whether your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(b) Process we will follow when we have medical evidence of your drug addiction or alcoholism.

(1) The key factor we will examine in determining whether drug addiction or alcoholism is a contributing factor material to the determination of disability is whether we would still find you disabled if you stopped using drugs or alcohol.

(2) In making this determination, we will evaluate which of your current physical and mental limitations, upon which we based our current disability determination, would remain if you stopped using drugs or alcohol and then determine whether any or all of your remaining limitations would be disabling.

(i) If we determine that your remaining limitations would not be disabling, we will find that your drug addiction or alcoholism is a contributing factor material to the determination of disability.

(ii) If we determine that your remaining limitations are disabling, you are disabled independent of your drug addiction or alcoholism and we will find that your drug addiction or alcoholism is not a contributing factor material to the determination of disability.

20 C.F.R. §§ 404.1535 and 416.935. In other words, if the ALJ completes the standard five-step process outlined above and determines that a claimant is disabled with substance abuse, the ALJ must then proceed to conduct the second analysis outlined above in order to determine if the claimant would still be disabled without the substance abuse. *Underwood v. Comm'r of Social Sec.*, No. 4:08-CV-2540, 2010 WL 424970 at *6, *10 (N.D.Ohio Jan 22, 2010). The claimant has the burden of proving that substance abuse is not a factor material to the determination of disability. *Estes v. Barnhart*, 275 F.3d 722, 725 (8th Cir.2002); *Brown v. Apfel*, 192 F.3d 492, 498 (5th Cir.1999).

## IV.   STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability. This Court's review of such a determination is limited in scope by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any

fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g).  Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards.  *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted).  Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007).  Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled.  The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001).  However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record."  *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.    ANALYSIS

Plaintiff's first few assertions shall be taken together since they all concern the ALJ's treatment of various doctors' opinions and his alleged failure to include some of their limitations in the ALJ's RFC for Plaintiff.

An ALJ must adhere to certain standards when reviewing medical evidence in support of a claim for social security.  Most importantly, the ALJ must generally give greater deference to the opinions of the claimant's treating physicians than to those of non-treating physicians.  SSR 96-2p, 1996 WL 374188 (July 2, 1996); *Wilson*, 378 F.3d at 544.   A presumption exists that the opinion of a treating physician is entitled to great deference.  *Id.*; *Rogers, supra*, at 243 (6th Cir. 2007.  If that presumption is not rebutted, the ALJ must afford controlling weight to the opinion of the treating physician if that opinion regarding the nature and severity of a claimant's conditions is

-7-

"well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

On the other hand, "opinions from nontreating and nonexamining sources are never assessed for 'controlling weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013. The Commissioner instead weighs these opinions based on the examining relationship (or lack thereof), specialization, consistency, and supportability, but only if a treating-source opinion is not deemed controlling. *Id.,* citing 20 C.F.R. §404.1527(c). Other factors "which tend to support or contradict the opinion" may be considered in assessing any type of medical opinion. *Id.* citing §404.1527(c)(6).

A medical source's statement on an issue reserved for the Commissioner, such as an assertion that a claimant is "disabled" or "unable to work," is a legal conclusion and not a medical opinion. 20 C.F.R. § 416.927(e). Such statements are not entitled to any special significance. 20 C.F.R. § 416.927(e)(3). "The determination of disability is ultimately the prerogative of the Commissioner, not the treating physician." *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir.2004).In other words, the "[r]esponsibility for deciding residual functional capacity rests with the ALJ," not a physician. *Vlach v. Comm'r of Soc. Sec.*, No. 12-2452, 2013 WL 3766585, at *12 (N.D. Ohio July 16, 2013) (citing *Webb v. Comm'r of Soc. Sec.*, 368 F.3d 629, 633 (6th Cir. 2004)); accord 20 C.F.R. § 416.946(c) (the ALJ "is responsible for assessing your residual functional capacity"); *Thomas v. Colvin*, 745 F.3d 802, 808 (7th Cir. 2014) ("[T]he determination of a claimant's RFC is a matter for the ALJ alone – not a treating or examining doctor – to decide."). To determine an individual's RFC, the Commissioner will review "all of the relevant medical and other evidence" in the record, which may include, but is not limited to, medical source opinions. 20 C.F.R. § 416.945(a)(3).

### A.    MEDICAL SOURCE OPINIONS

The undersigned points out that the Appeals Council had previously vacated the ALJ's prior decision and remanded Plaintiff's case on April 5, 2012 because the ALJ failed to adequately weigh and evaluate any of the medical opinions, including those of Dr. Smith, Dr. Khan, Dr. Jayber and

Dr. Saghafi and failed to explain why he did not include their limitations for Plaintiff in his RFC. Tr. at 149-150.

### 1.    Opinions of Drs. Smith, Evans and Khan

The undersigned notes that Drs. Smith, Evans and Khan are non-treating agency medical sources.  Drs. Smith and Khan are psychologists who examined Plaintiff at the request of the agency. Tr. at 571, 674, 704.  Dr. Khan is an agency reviewing psychologist who completed a mental RFC assessment and psychiatric review technique form on behalf of the agency.  *Id.* at 687.  20 C.F.R. §§ 404.1527(e)(2)(ii) and 416.927(e)(2)(ii) provide that:

> When an administrative law judge considers findings of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, the administrative law judge will evaluate the findings using the relevant factors in paragraphs (a) through (d) of this section, such as the consultant's medical specialty and expertise in our rules, the supporting evidence in the case record, supporting explanations the medical or psychological consultant provides, and any other factors relevant to the weighing of the opinions. Unless a treating source's opinion is given controlling weight, the administrative law judge must explain in the decision the weight given to the opinions of a State agency medical or psychological consultant or other program physician, psychologist, or other medical specialist, as the administrative law judge must do for any opinions from treating sources, nontreating sources, and other nonexamining sources who do not work for us.

Paragraphs a through d of the regulations discuss the general requirements of evaluating opinion evidence and paragraph c in particular identifies factors for the ALJ to consider in determining the weight to give to any medical opinion.  20 C.F.R. §§ 404.1527(c), 416.927(c).  These factors include the medical source's examining relationship (or lack thereof), the medical source's specialization, the support provided by the medical source for his or her opinion, and the consistency of the medical source's opinion with the record as a whole.  *Gayheart*, 710 F.3d at 376*,* citing   20 C.F.R. §404.1527(a)-(e). Other factors "which tend to support or contradict the opinion" may also be considered in assessing any type of medical opinion.  *Id.,* citing §404.1527(c)(6).

In his first alleged error, Plaintiff argues that the ALJ failed to mention the opinion of Dr. Smith, who opined that Plaintiff had a highly variable ability to maintain attention and concentration, a highly variable ability to follow simple one- and two-step instructions, and an inconsistent ability to relate to the public, co-workers and supervisors.  ECF Dkt. #13 at 11-13.

Plaintiff contends that the ALJ was required to accept and adopt, or reject and explain, the limitations opined by Dr. Smith.  *Id*. at 11.

On March 30, 2005, Dr. Smith issued a report regarding his psychological evaluation of Plaintiff for the agency.  Tr. at 571.  Dr. Smith reported that Plaintiff had driven himself to the interview and he was living with his grandmother and his uncle.  *Id*.  Plaintiff was 27 years old at the time of this evaluation and he indicated that he was in regular classes in school and earned "Bs" while he was in school.  *Id*.  He explained that he graduated from high school in January of 1997 rather than in 1996 as expected because he was expelled for rebelliousness, temper and acting out.  *Id*. After he graduated, Plaintiff attended a community college for auto CAD classes and he went to college for computer repairs and got a certificate from a six-week program.  *Id.*

Plaintiff indicated to Dr. Smith that he had hurt his back in January of 2003 and was healthy before that time, except for juvenile rheumatoid arthritis which would flare up intermittently.  Tr. at 572.  He explained that doctors diagnosed him with herniated discs and protrusions at L4-L5 and L5-S1 with muscle strain.  *Id.*  He completed physical therapy and aquatic therapy, but aquatic therapy aggravated his symptoms so he stopped it.  *Id*.  He came back to the area in August of 2004 but lacked insurance, so he could not continue treatment, and he did not have a MRI as his doctor did not seem to want to do much about his condition, but prescribed OxyContin 4 mg three times per day, Percocet 10 mg as needed three to four times per day, and Xanax 2 mg three times per day.  *Id*.  He stated that the medications helped at first, but then began helping less.  *Id*.  Plaintiff also stated that he had a heart attack in June of 2004 due to an overdose on Elavil which was prescribed to him for depression.  *Id.* Plaintiff indicated that he had been smoking marijuana at the time that he was hospitalized for the overdose and he complained that the hospital said that there was cocaine in his system, but he did not remember taking cocaine.  *Id*. at 572-573.

Plaintiff reported that he had previously attended counseling in 1997 after his mother was murdered and he was put in a psychiatric ward for awhile after being tricked into going by his grandfather.  Tr. at 573.  He indicated that he "flipped out" while in there, punching holes in walls, and when he gets angry, he "flips out and punches walls."  *Id*.  Plaintiff expressed that his mood was pretty good until someone irritated him and he stated that he lies in bed and plays X-box games or

-10-

goes to his friend's house or girlfriend's house.  *Id.*  He stated that his appetite was poor and he did not get hungry, and when he was asked how many meals he eats, he said "zero to five or eight" after becoming irritated and uncooperative in responding to Dr. Smith.  *Id.*  Dr. Smith noted Plaintiff's irritation and he noted that Plaintiff curled up on Dr. Smith's couch, lying on his side with his shoes off, as he began giving careless responses.  *Id.* at 574.  Dr. Smith noticed a great deal of "pain behavior" as Plaintiff walked extremely slow, stood up during much of the interview, laid down near the end, he would shift in his chair when he sat, and he appeared to be in considerable physical pain and discomfort.  *Id.*

Dr. Smith found that Plaintiff was alert and oriented with intact memory.  Tr. at 574. He diagnosed Plaintiff with Oppositional Defiant Disorder ("ODD") and cannabis abuse and rated his global assessment of functioning at 50, indicative of serious symptoms.  He opined that Plaintiff's ability to maintain attention and concentration was "highly variable subject to his level of irritability and physical pain."  *Id.*  Dr. Smith further opined that Plaintiff's

> ability to follow simple one or two step job instructions would similarly be affected. His ability to relate to the public, co-workers and supervisors will be inconsistent and undependable because he can be easily annoyed, frustrated, and irritated and when he becomes angry and frustrated, he will become careless in his treatment of others, disrespectful, and although maybe not physically harmful, will at least become verbally abusive by his own admission.

*Id.*  Dr. Smith noted that Plaintiff did apologize at the end of the interview for his behavior.  *Id.*

In his decision, the ALJ did not mention Dr. Smith's name or specifically address his opinion.  Tr. at 23, citing Tr. at 571-575.  Rather, the ALJ cited to the page number of the record where Dr. Smith's report was located and noted that Plaintiff was diagnosed with ODD and cannabis abuse in March 2005 and Plaintiff reported that he lounged around reading computer books, played X-box games in bed, went to his friend's house and to his girlfriend's house, and he occasionally smoked marijuana, smoked cigarettes, and he could be easily annoyed, frustrated and irritated.  *Id.* at 19-20.  The ALJ did not discuss Dr. Smith's opinion any further and he did not address the comments made by Dr. Smith concerning the variability of Plaintiff's ability to pay attention, concentrate, follow instructions and deal with co-workers, the public and supervisors.

-11-

The ALJ did indicate earlier in his decision that he concurred with the testimony of the ME, who diagnosed Plaintiff with lumbar spine pain, major depressive disorder, anxiety disorder, anti-social personality disorder and substance abuse.  Tr. at 20.  Plaintiff's counsel questioned the ME about Dr. Smith's opinion at the hearing, asking if he agreed with Dr. Smith's statements and opinions.  *Id.* at 48-52.  The ME testified that he agreed with Dr. Smith that Plaintiff had ODD and cannabis abuse, but disagreed with Dr. Smith's opinion that Plaintiff's abilities to maintain concentration and to follow one- and two-step instructions were highly variable opinion subject to his level of irritability and physical pain.  *Id.* He also disagreed with Dr. Smith's opinion that Plaintiff was inconsistent and undependable with respect to interpersonal interactions.  *Id.* The ME explained that the medical record did not support such limitations and Dr. Smith had nevertheless assigned Plaintiff a GAF of 50, which impressed the ME as he considered this GAF to be satisfactory and consistent with the ability to work full-time, although with restrictions.  *Id.* The ME opined that he perceived Plaintiff's difficulties interacting to be part of his ODD and that if Plaintiff wanted to work, he could work and control himself.  *Id.*  He also relied upon his clinical experience with other patients to justify his opinions that were contrary to those of Dr. Smith.  *Id*. at 53.  He further explained that while he agreed that Plaintiff had a personality disorder of ODD, he disagreed with the degree of severity of the disorder and Plaintiff's ability to control or modify his behavior if he wanted to do so.  *Id.* at 55-56.

While the ME and Plaintiff's counsel addressed Dr. Smith's opinion, the ALJ did not discuss any of the ME's testimony concerning Dr. Smith's opinion and limitations for Plaintiff.  In fact, in explaining why he attributed "great weight" to the ME's assessment, the ALJ specifically referred to the ME's disagreement with opinions in "Exhibit 27F" which were the mental RFC and physical RFC assessments completed by Dr. Jaybar, Plaintiff's family practice physician.  Tr. at 22, 969-971.  The ALJ did not analyze the ME's opinion in conjunction with Dr. Smith's opinion, he failed to indicate the weight that he gave to Dr. Smith's opinion, he failed to explain his treatment of Dr. Smith's opinion and otherwise failed to address any of his findings except for his diagnoses and Plaintiff's report of his activities to Dr. Smith.  *Id*. at 23.

-12-

For these reasons, the undersigned recommends that the Court find that the ALJ did not comply with 20 C.F.R. §§ 404.1527 and 416.927 in evaluating Dr. Smith's opinion.

Defendant contends that the ALJ's error in not indicating the weight given to the opinion of Dr. Smith is harmless because Dr. Smith assigned Plaintiff a GAF of 50, which the Sixth Circuit has found is consistent with an ability to work, and Dr. Evans opined that Plaintiff's abilities to concentrate, pay attention to tasks and follow simple instructions were not impaired. ECF Dkt. #16 at 11. The undersigned recommends that the Court reject Defendant's reasoning as post-hoc rationalizations since the ALJ did not cite such reasons in his decision. *See Weekly v. Comm'r of Soc. Sec. Admin.*, No. 1:13-CV-2108, 2015 WL 45529, at *7 (N.D. Ohio, Jan. 2, 2015) citing *Simpson v. Comm'r of Soc. Sec.*, 344 Fed. App'x 181, 192 (6th Cir. 2009) *and Martinez v. Comm'r of Soc. Sec.*, 692 F.Supp.2d 822, 826 (N.D. Ohio 2010). Further, "the Commissioner 'has declined to endorse the [Global Assessment Functioning] score for 'use in the Social Security and [Supplemental Security Income] disability programs,' and has indicated that [Global Assessment Functioning] scores have no 'direct correlation to the severity requirements of the mental disorders listings.'" *Kennedy v. Astrue*, 247 Fed. App'x 761, 766 (6th Cir. 2007), quoting *DeBoard v. Comm'r of Soc. Sec.*, 211 Fed.Appx. 411 (6th Cir.2006) (quoting *Wind v. Barnhart*, 133 Fed.Appx. 684, 691–92 n. 5 (11th Cir.2005)) (quoting 65 Fed.Reg. 50746, 50764–65 (Aug. 21, 2000)). And even if the Court gives some value or credit to Defendant's GAF assertion, a GAF of 41-50 indicates "serious symptoms (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) or any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." DSM-IV-TR at 34. Accordingly, the undersigned recommends that the Court find that Defendant's reasons are insufficient to support the ALJ's failure to address Dr. Smith's opinion.

The undersigned notes that the ALJ also failed to adequately address the opinion of Dr. Evans, another agency examining psychologist, who evaluated Plaintiff in 2008 and diagnosed him with depressive disorder NOS, adult antisocial behavior and cannabis abuse. Tr. at 24, citing Tr. at 674. The ALJ noted Dr. Evans' diagnoses and reports by Plaintiff to Dr. Evans of his ability to drive, help do laundry and wash dishes, and he noted Dr. Evans' finding that Plaintiff's ability to concentrate and attend to tasks was unimpaired but he appeared to have significant anger issues.

-13-

*Id.* at 24, citing Tr. at 677.  Again, however, as with the assessment of Dr. Smith, the ALJ failed to indicate the weight that he attributed to Dr. Evans' opinion.  The ALJ also failed to discuss Dr. Evans' opinion that Plaintiff was able to understand and follow simple repetitive directions or why he did not include such a limitation in Plaintiff's RFC.  The undersigned therefore recommends that the Court find that the ALJ violated 20 C.F.R. §§ 404.1527 and 416.927 in evaluating Dr. Evans' opinion.  While the ALJ cited to Dr. Evans' opinion and its conclusions, he never indicated the weight that he attributed to Dr. Evans' opinion and he failed to include Dr. Evans' limitation of Plaintiff to understand and follow only simple repetitive directions and he failed to explain why he did not include such a limitation in Plaintiff's RFC.

Plaintiff also asserts that while the ALJ mentioned the opinion of state agency reviewing psychologist Dr. Khan in his decision, the ALJ failed to identify the weight attributed to this assessment or the reasons why he did not accept Dr. Khan's limitation of Plaintiff to a static and predictable work environment and to only occasional intermittent superficial interaction with others.  Tr. at 24, citing Tr. 704.  Plaintiff is correct that the ALJ mentioned the opinion and its conclusions, but failed to indicate the weight given the assessment and failed to incorporate the limitations opined in his RFC for Plaintiff.  *Id.* at 24.  Accordingly, the undersigned recommends that the Court find that the ALJ violated 20 C.F.R. §§ 404.1527 and 416.927 in evaluating Dr. Khan's opinion in his decision.

Defendant contends that the ALJ's failure to assign weight to Dr. Khan's opinion is also harmless error because Plaintiff did not allege an inability to get along with others and the ALJ's RFC adequately accommodated Plaintiff's description of his interpersonal interaction abilities.  ECF Dkt. #16 at 18-19.  Contrary to Defendant's assertion, Plaintiff did indicate that he did not get along with others.  He informed Dr. Evans that he got along well with co-workers "as long as they didn't irritate me."  Tr. at 675.  He stated to Dr. Smith that his mood had been pretty good, "until somebody irritates him, he said.  Then he gets verbally abusive or gets snappy."  *Id*. at 573.  As an example of an irritating instance, Plaintiff cited to Dr. Smith's examination as the most recent example.  *Id*.  Plaintiff stated that he tries to stay away from people.  *Id*.  He thereafter laid on Dr. Smith's couch and became irritated, giving careless responses to Dr. Smith's questions and becoming increasingly

irritable.  *Id*. at 573-574.  As such, Dr. Smith indicated that Plaintiff's ability to relate to the public, co-workers and supervisors would "be inconsistent and undependable because he can be easily annoyed, frustrated, and irritated and when he becomes angry and frustrated he will become careless in his treatment of others, disrespectful, and although maybe not physically harmful, will at least become verbally abusive by his own admission."  *Id*. at 574.  Just as with Drs. Smith and Evans' opinions, the ALJ failed to indicate the weight that he attributed to Dr. Khan's opinion and he failed to discuss Dr. Khan's limitations of Plaintiff to a "static and predictable environment" and to superficial interaction on an "occasional intermittent basis" and why he did not include such limitations in his RFC for Plaintiff.

Due to the ALJ's failure to indicate the weight attributed to the opinions of Drs. Smith, Evans and Khan, and his decision not to adopt some of the limitations set forth in those opinions without explanation, the undersigned recommends that the Court find that remand is necessary in order for the ALJ to more thoroughly address their opinions and findings, including stating the weight that he attributed to each opinion and the reasons why he does or does not include their limitations for Plaintiff.  20 C.F.R. §§ 404.1527, 416.927.  While the undersigned acknowledges that the RFC is ultimately a determination for the ALJ, he must still "consider and address medical source opinions.  If the RFC assessment conflicts with a opinion from a medical source, the adjudicator must explain why the opinion was not adopted."  Social Security Ruling ("SSR") 96-8p.

## 2.  Opinions of Drs. Jayber and Saghafi

Plaintiff also complains that the ALJ did not adequately explain his reasons for rejecting part of the opinions of Dr. Jayber, Plaintiff's family physician, and the opinion of Dr. Saghafi, the agency examining physician.  ECF Dkt. #13 at 13-18.  Plaintiff asserts that substantial evidence does not support the ALJ's rejection of these opinions.  *Id*.

The undersigned notes that if Dr. Jayber is a treating physician, his opinion is entitled to controlling weight unless his opinion as to the nature and severity of Plaintiff's conditions is not "well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Wilson,* 378 F.3d at 544.

-15-

On February 9, 2009, Dr. Jayber completed both a Mental Functional Capacity Assessment and a Basic Medical Assessment for the Ohio Job and Family Services. Tr. at 969-971. In the Mental Functional Capacity Assessment, Dr. Jayber concluded that Plaintiff was markedly limited in maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance, and being punctual, completing a normal workday or workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* at 969. He opined that Plaintiff was moderately limited in other areas and not significantly limited in others. *Id.* In the Basic Medical portion of the assessment, Dr. Jayber identified chronic lumbosacral pain as the condition and noted decreased range of motion, positive straight leg raising and a MRI showing DDD and a herniated disc. *Id.* at 970. He further opined in the Basic Medical Portion of the assessment that Plaintiff could stand/walk up to one hour per workday, sit for up to one hour per workday, lift and carry up to five pounds frequently and ten pounds occasionally, and he was extremely limited in pushing/pulling and in bending, and markedly limited in reaching, handling and repetitive foot movements. *Id.* at 971.

Plaintiff complains that the ALJ erroneously rejected that part of Dr. Jayber's opinion in which he concluded that Plaintiff could sustain only part-time sedentary work and had marked limitations in maintaining regular attendance, being punctual, and in completing normal workweeks. ECF Dkt. #13 at 15. The ALJ did cite to Dr. Jayber's February 2009 opinion. Tr. at 24. He specifically indicated that Dr. Jayber found that Plaintiff was markedly limited in maintaining attention and concentration for extended periods, performing activities within a schedule, maintaining regular attendance and being punctual, completing a normal workday and workweek without interruption from psychologically-based symptoms and performing at a consistent pace without an unreasonable number and length of rest periods. *Id.* The ALJ further noted Dr. Jayber's opinion that Plaintiff could stand and/or walk up to one hour, sit for up to one hour and lift and carry up to ten pounds. *Id.* In attributing "little weight" to Dr. Jayber's conclusions, the ALJ indicated that Dr. Jayber's specialty was family practice, he listed chronic lumbosacral pain as the reason for

his restrictions, and Plaintiff had stated that he did not get to see Dr. Jayber as he just obtained prescriptions from him.  *Id.*

The undersigned notes that the first time that Dr. Jayber examined Plaintiff was the date that he completed the Basic Medical Form and the Mental Functional Capacity Assessment.  Plaintiff acknowledges as much in stating that Dr. Jayber began treating Plaintiff in February 2009.  ECF Dkt. #13 at 15.  Thus, the treating physician rule does not apply to the ALJ's analysis of Dr. Jayber's opinion.

The undersigned recommends that the Court find that the ALJ complied with 20 C.F.R. §§ 404.1527(c)(2) and 416.927(c)(2) in specifying that he attributed "little weight" to Dr. Jayber's opinions and in providing reasons for the weight that he attributed to the opinion.  The ALJ first indicated that he attributed little weight to the opinion because his listed specialty is family practice, impliedly discounting the part of Dr. Jayber's opinion concerning the Mental Functional Capacity Assessment.  Tr. at 24.  This is a valid reason for the ALJ to consider in deciding the weight to give to Dr. Jayber's opinion.  20 C.F.R. §§ 404.1527(c)(5), 416.527(c)(5)("(5) Specialization.  We generally give more weight to the opinion of a specialist about medical issues related to his or her area of specialty than to the opinion of a source who is not a specialist.").  The ALJ also indicated that Dr. Jayber identified chronic lumbosacral pain as the only medical condition of Plaintiff on the Basic Medical Form.  Tr. at 24.  The ALJ further cited to Plaintiff's report that he did not get to see Dr. Jayber and he just got prescriptions from him.  *Id.* Supportability of Dr. Jayber's opinion and its consistency with the record as a whole are also valid factors for the ALJ to consider in determining the weight to give to Dr. Jayber's opinion.   20 C.F.R. §§ 404.1527(c)(3-4), 416.527(c)(3-4).

Plaintiff complains that the ALJ's reliance upon Dr. Jayber's identification of chronic lumbosacral pain as a reason for attributing less weight to Dr. Jayber's physical limitations is erroneous since Dr. Jayber also indicated that Plaintiff had a reduced range of motion, positive straight leg raising bilaterally and an MRI showing DDD and a herniated disc. ECF Dkt. #13 at 16-17.  The undersigned agrees that if this were the only reason relied upon by the ALJ in attributing little weight to Dr. Jayber's opinion, it would not suffice.  However, the ALJ also reviewed the

-17-

testimony of the ME and gave the ME's assessment great weight.  Tr. at 22.  Plaintiff's counsel specifically questioned the ME about Dr. Jayber's opinion and the ME indicated that the evidentiary record did not support Dr. Jayber's marked mental limitations for Plaintiff and his marked and extreme physical limitations for Plaintiff.  Tr. at 115.  The ALJ agreed in his decision, reviewing Plaintiff's medical history, which included a June 2003 MRI showing mild to moderate L4-L5 and L5-S1 disc degeneration, moderate midline L4-L5 disc protrusion deflecting the descending left L5 nerve root, and moderate generalized L5-S1 disc bulge protrusion without nerve root impingement. *Id.*, citing Tr. at 567-568.  The ALJ also cited to a May 2005 MRI showing DDD and mild broad-based disc bulging at the L4-L5 and L5-S1 disc levels, and a 2008 MRI showing DDD at L4-L5 and L5-S1 with protrusion to the right and minimal affect upon the right S1 nerve root.  Tr. at 22, citing Tr. at 595, 725.  The ALJ also cited to the fact that in January of 2005, Plaintiff reported to his doctor who had recommended that he see a rheumatologist for his juvenile rheumatoid arthritis that he did not need to see a rheumatologist because he was feeling stable.  *Id.*, citing Tr. at 650.  That same doctor continued to recommend that Plaintiff see a rheumatologist and by April 13, 2005, indicated that no further pain medications would be prescribed if he did not follow up with a rheumatologist.  *Id.* at 647.  The doctor indicated in May of 2005 that the MRI results of Plaintiff's back showed no obvious surgical problems but did show worsening osteoarthritis and degenerative joint disease.  *Id.* at 644.

The ALJ also cited to an agency disability form completed by Plaintiff's family doctor, Dr. Potoczak, M.D. in 2006 in which he diagnosed rheumatoid arthritis, chronic back pain and lumbar disc bulging with no herniation.  Tr. at 22, citing Tr. at 601.  Dr. Potoczak indicated that Plaintiff had a good response with medications and he opined that Plaintiff was not disabled and could work most jobs as long as the jobs did not involve heavy lifting and as long as he stayed on his medications.  *Id.*  The ALJ further cited to a treatment note by Dr. Potoczak dated October 26, 2006 in which he informed Plaintiff that he was not disabled and told Plaintiff that as long as he took his medications, he could work.  *Id.*, citing Tr. at 625.

In addition, the ALJ cited to agency examining physician Dr. Saghafi's findings of a normal motor examination and decreased reflexes, with no evidence of a radiculopathy.  Tr. at 22-23, citing

-18-

to Tr. at 682. The ALJ cited Dr. Saghafi's note that Plaintiff reported that he could bend, walk and stand for up to 30-45 minutes at a time per history and was able to lift, push and pull normally. *Id*. The ALJ also cited to state agency findings opining a greater exertional level of work for Plaintiff but attributed some weight to them, finding that Plaintiff's complaints of pain and the 2008 MRI showed that he would be best suited for a light work level with the limitations that the ALJ determined for him. *Id.* The ALJ also cited to Plaintiff's reports that he lounged around the house reading computer books, playing Xbox games and visiting his friends' and girlfriend's houses. *Id*.

Plaintiff also complains that the ALJ should not have relied upon Dr. Jayber's family practice specialty and chronic lumbosacral pain identification in attributing little weight to Dr. Jayber's mental health limitations for Plaintiff. However, the specialty of the physician is a factor that can be considered in determining the weight to give to a medical source's opinion and the chronic lumbosacral pain condition appears to be the only condition identified by Dr. Jayber as support for his Mental Functional Capacity Assessment. Tr. at 968-969. Dr. Jayber's only diagnosis for his Basic Medical Form which accompanied the Mental Functional Capacity Assessment listed chronic lumbosacral pain as the condition of Plaintiff leading him to the restrictions that he opined. *Id*., citing Tr. at 969-970. The form requested that the doctor identify the physical and mental health conditions and Dr. Jayber identified chronic lumbosacral pain as the only condition. The ALJ also relied upon the testimony of the ME who did not agree with Dr. Jayber's mental health restrictions for Plaintiff. *Id*. at 21-22.

For these reasons, the undersigned recommends that the Court find that the ALJ adequately explained his reasons for attributing little weight to the opinions of Dr. Jayber and substantial evidence supports the ALJ's decision to do so.

Plaintiff also challenges the ALJ's treatment of the opinion of Dr. Saghafi, the agency examining physician who opined that Plaintiff was able to bend, walk and stand for up to 30-45 minutes per his history and "should be able to perform at least seated type of work with intermittent breaks." ECF Dkt. #13 at 13-15, citing Tr. at 682. Plaintiff asserts that the ALJ erred in rejecting Dr. Saghafi's opinion that Plaintiff could not perform the prolonged standing or walking needed in order to perform light work. ECF Dkt. #13 at 13-15.

The ALJ addressed Dr. Saghafi's opinion in his decision and gave it "limited" weight, explaining that the evidence demonstrated that Plaintiff could perform light work because the record showed that Plaintiff was performing some part-time work and in August of 2011 Plaintiff was released from jail after serving two months for committing robbery.  Tr. at 23.  The ALJ concluded that "these activities suggest that Mr. Foy has been capable of a greater level of exertion."  *Id.*

The undersigned recommends that the Court find that the ALJ's explanation for the weight attributed to Dr. Saghafi's opinion is lacking.  The part-time work referred to by the ALJ, which was also questioned by Plaintiff, coupled with Plaintiff serving jail time for a robbery, are not sufficient "activities" to justify the ALJ's decision to attribute limited weight to Dr. Saghafi's opinion.

However, based upon a review of Dr. Saghafi's opinion and the ALJ's decision as a whole, the undersigned recommends that the Court find that the ALJ's error constituted harmless error.  The undersigned notes that Dr. Saghafi opined that Plaintiff could perform "*at least* seated type of work" with intermittent breaks.  Tr. at 682.  Thus, it can be construed that Dr. Saghafi was suggesting that Plaintiff could perform more than sedentary work.  The RFC is "the *most* [a claimant] can still do despite his limitations," not the least that a claimant can do as Dr. Saghafi opined.   20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1)(emphasis added).  Accordingly, the undersigned recommends that the Court find that the ALJ's treatment of Dr. Saghafi's opinion was erroneous, but it was harmless error.

### B.  PLAINTIFF'S REMAINING CLAIMS OF ERROR

In his remaining claims of error, Plaintiff challenges the ALJ's finding that as of October 2009, substance abuse was a contributing factor material to the determination of his disability and he challenges the ALJ's reliance upon the VE's testimony for his Step Five determination.  ECF Dkt. #13 at 20-24.

The undersigned recommends that the Court decline to address these alleged errors because the ALJ's analysis of the opinions of Drs. Smith, Evans and Khan upon remand may impact his findings under the disability evaluation.  *Smith v. Comm'r of Soc. Sec*., No. 1:12CV2062, 2013 WL 3337405 at *10 (N.D. Ohio, July 2, 2013)(declining to address assertion concerning ALJ violation of treating physician rule when Court remanded for effect ME testimony had on ALJ's Step Three

-20-

determination); *see also Trent v. Astrue*, Case No. 1:09CV2680, 2011 WL 841538 (N.D.Ohio March 8, 2011) (declining to address claimant's remaining assertion of error because remand was already required and ALJ's application of the treating physician rule on remand may impact his findings under the sequential disability evaluation).

## VI.   CONCLUSION AND RECOMMENDATION

For the foregoing reasons, the undersigned recommends that the Court REVERSE the ALJ's decision and REMAND the instant case for further proceedings consistent with the instant Report and Recommendation.  The ALJ shall reevaluate the opinions of Drs. Smith, Evans and Khan, indicate the weight assigned to those opinions with explanation, reevaluate and address Plaintiff's RFC if necessary based upon those reevaluations, and redetermine whether Plaintiff's substance abuse was a material contributor to his disability and the other steps in the sequential analysis.


DATE:  June 15, 2015

_____*/s/George J. Limbert*_____
GEORGE J. LIMBERT
UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).